**No. 59931.**—A. Orlikoff and Mexican Aircraft Company *v.* United States, petition 6911–R (San Diego).

Wilson, Judge:   This is a petition for the remission of additional duties, filed pursuant to section 489 of the Tariff Act of 1930, which duties accrued by reason of the undervaluation on entry of certain huaraches imported from Tijuana, Mexico, in February 1943.

Entry 301–C was made on February 18, 1943, based on an invoice unit value of 3.85 pesos per pair.   Entry 303–C was made on February 19, 1943, based on invoice unit values of 3.95 pesos and 4 pesos per pair.   Both entries were appraised on February 29, 1944, at 4.25 pesos per pair, plus packing and stamp tax.

The question for determination is whether the petitioners have established by satisfactory evidence that the entry of the huaraches at a less value than that found on final appraisement was without intention to defraud the revenue of the United States, or to conceal or misrepresent the facts of the case, or to deceive the appraiser as to the value of the merchandise.

In support of the petition, there was introduced the testimony of Mrs. Rose Orley.   She stated that her name had been changed from Orlikoff to Orley and that she was associated with her husband, A. Orlikoff, as an active partner in the firm of Mexican Artcraft Company, one of the petitioners herein.   She further testified that she was fully familiar with the details covering the purchase of the involved huaraches.

The circumstances surrounding the shipment at bar, as disclosed by the testimony of petitioners' witness, are as follows:

The petitioning company was interested in purchasing a large quantity of huaraches and, to facilitate the purchase of the goods, invited a Mr. Robles to become associated with the firm as a partner.   Thereupon, Robles, acting under instructions from the petitioners, went to Guadalajara, Mexico, and purchased 35,000 pairs of ladies' huaraches from a Mexican manufacturer, Mr. Macias. The importation here under consideration consists of some 10,000 pairs of those huaraches.   At the time of purchase, a deposit of 10,000 pesos, Mexican currency, was paid to the Mexican manufacturer to be applied as payment on the last shipment of huaraches made to the petitioners.

Petitioners' witness further testified that, in connection with the importation of the involved merchandise, she went in the early part of February 1943 to her customs broker's warehouse at San Ysidro, Calif., at which place the huaraches in question were examined by the customs officials. She then stated that, at the time of such examination, she observed that the quality of the huaraches imported was inferior to that contracted for in accordance with samples previously received from the seller; that, being disturbed at the inferior quality of the goods, she instructed Mr. Robles, who was supervising the shipment of the merchandise in Mexico, to return to Los Angeles. Thereafter, Mr. Robles went back to Mexico and "had a number of discussions with Mr. Macias" (R. 11). Later, the petitioners continued to import the balance of the 35,000 pairs of huaraches.

Mrs. Orley further stated that she was in constant touch with Mr. Robles by correspondence and telephone, relative to the market value of huaraches of the grade and character imported and that, from information received, she believed that the purchase prices represented the prevailing market prices for goods of that quality.

Petitioners' witness further testified that at the time the huaraches in question were being examined at her broker's warehouse, she did not advise the customs officials as to the inferior quality of the merchandise, explaining that "I didn't think it would be of any consequence to complain to them" (R. 15). She then stated that, in entering the merchandise at the invoice prices, she had no intention of deceiving the appraiser as to the value of the goods and that, in making entry of the merchandise at the invoice prices, she believed such prices represented the correct values for the type of goods imported, inasmuch as entry of the merchandise at the purchase prices was predicated upon information obtained from Mr. Robles, who was in Mexico supervising the shipments, and who, she believed, was familiar with the prevailing market prices in that country.

On cross-examination, petitioners' witness again testified that, at the time she examined the imported huaraches, she made no complaint to the customs officials that the merchandise was not as per order, explaining that she did not believe the customs "would be interested in anything like that," and then stated that the only thing she did to ascertain the value of the imported goods was to communicate with Mr. Robles (R. 15).

On behalf of the respondent, there was introduced the testimony of Jeremiah S. Bogan, who, in his capacity as appraiser of merchandise, had examined the huaraches in question. He corroborated the previous testimony of the witness Orley that no complaint was made to him concerning the quality of the imported merchandise. He then testified that, prior to appraisement, he sent petitioners' witness a "notice of intention to appraise this merchandise." This statement was disputed by petitioners' witness, who denied that she had received notice of intended appraisement of these huaraches at 4.25 pesos per pair (R. 42). However, there was introduced and received in evidence a letter from the petitioners, under date of January 20, 1944, addressed to the appraiser at San Ysidro, Calif., wherein petitioners requested that appraisement of the involved huaraches be withheld "in each instance where a difference arises in a class of importations between the entered value and such value as the appraiser may find as a result of pending investigations" (petitioners' collective exhibit 3). Petitioners further requested, in said communication, information as to the value of the merchandise.

In the case of *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453, our appellate court established the principle that a petitioner, seeking to have additional duties remitted to it, must show (1) that, in undervaluing his merchandise, he was acting in entire good faith; (2) that no facts or circumstances were known to the petitioner when he made entry that would cause a prudent and reasonable person to question the correctness of the values given by him; and

(3) that a full disclosure was made to the collector in making the entry of all material facts within his knowledge and possession relative to the value of the imported merchandise. In *R. W. Gresham* v. *United States*, 27 C. C. P. A. (Customs) 106, C. A. D. 70, the court stated that it was the duty of the entrant to inform himself as to the correctness of his representations relating to the value of the merchandise and that a showing of indifference to its proper value does not meet the requirements of satisfactory proof under the statute. On the basis of the record presented in this case, we are persuaded that the petitioners have not proved that they are entitled to relief.

Petitioners' witness testified that, in entering the merchandise at the purchase prices, she did so in the belief that such prices represented the true market value of the goods. However, the invoices involved, under column 11 thereof, show the current export prices to be 3.99½ and 4.15 pesos per pair. While the witness testified that she communicated with Mr. Robles relative to the value of the goods and that she relied upon the information supplied by him, the only communications specifically referred to in the record appear to have developed by reason of the discovery of the quality of the merchandise, upon examination thereof after entry of the goods had been made, but the record is silent as to any investigation made by the petitioners relative to the value of the goods prior to entry. As noted above, the invoices disclosed higher prices than the purchase prices, which situation should have been sufficient, in our opinion, to put a prudent business person on notice to seek information to support the values upon which entry was made. The witness testified, however, that she presented the papers to her broker to make entry at the purchase prices, without any further instructions, apparently ignoring the information appearing on the invoices, although it appears that petitioners' witness had over 14 years' experience in the importation of huaraches. It appears significant to note that the broker was not called to testify in this case.

The record further discloses that, almost a year after entry, the petitioners wrote to the appraiser seeking information as to the value of the goods. Such request for information is not sufficient to justify relief. It is not part of the official duty of the examiner to supply information as to the value of the merchandise. *United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. (Customs) 29, C. A. D. 392. The burden of ascertaining the correct value of imported merchandise rests on an entrant alone. The petitioners in this case did not meet the burden imposed upon them under the statute.

A mere categorical declaration by one seeking relief under section 489, *supra*, that he had no intention of defrauding the revenue of the United States or concealing or misrepresenting the facts or deceiving the appraiser as to the value of the merchandise, may not be accepted as of itself constituting satisfactory evidence within the meaning of the statute. *United States* v. *W. J. Westerfield*, 40 C. C. P. A. (Customs) 115, C. A. D. 507.

In our present determination, we are not unmindful of the finding by the court in *A. Orlikoff and Mexican Artcraft Company* v. *United States*, 31 Cust. Ct. 350, Abstract 57707. That case also involved a petition by the same petitioners as here for remission of additional duties imposed on shipments of huaraches from Mexico. It appears that the merchandise there under consideration, as was that in the case at bar, was part of a purchase order covering some 35,000 pairs of huaraches. Some 10,000 pairs are involved in the shipment here under consideration.

The record in Abstract 57707, *supra*, was not incorporated in the record of the case at bar, and, accordingly, we cannot consider the facts appearing therein in our consideration of the petition now before us. Reference to that case, however, discloses that, on the basis of the record there presented, the court found that petitioners had established their good faith under the rule as laid down in the *Wolf* case, *supra*, as to warrant relief. There are, however, some differences between

that record and the one at bar. It appears that one of the elements of claimed inferiority of the merchandise in the prior *Orlikoff* case (which induced the petitioners to believe the entered values were higher than the true values) was the fact that, on and after February 15, 1943, the manufacturer substituted split leather for the full grain leather supposed to have been used. The huaraches involved in Abstract 57707, *supra* (petition 6827–R), appear to have been made and shipped after February 15, 1943, whereas the present record indicates that the huaraches here involved were made before the date, i. e., when the claimed inferior merchandise was made. In view of the lack of showing the full circumstances surrounding the shipments of the huaraches at bar and on the basis of the facts and record here presented, we are of opinion that judgment denying plaintiffs' petition herein is warranted.

Under all the circumstances of the case, we find that the petitioners have failed in their burden of establishing their good faith, as required under the pertinent statute. The petition is denied. Judgment will be entered accordingly.

### DISSENTING OPINION

OLIVER, Chief Judge: I respectfully dissent from the conclusion reached by my colleagues in this case.

The record herein establishes a set of facts substantially the same as those which were found by the court in *A. Orlikoff and Mexican Artcraft Company* v. *United States* (31 Cust. Ct. 350, Abstract 57707; rehearing denied, 32 Cust. Ct. 425, Abstract 57917, and not appealed). That case, like the one now before us, involved a petition for the remission of additional duties imposed on importations of huaraches from Mexico. Here, as there, the shipments under consideration were part of an aggregate purchase of 35,000 pairs. In the *A. Orlikoff et al.* case, the court, citing *Wolf* v. *United States* (13 Ct. Cust. Appls. 589, T. D. 41453), granted the petition. In reaching its conclusion, the court said:

> From this record, it is clear that the importers were confronted with an unusual situation in that the merchandise was not in conformity with the sample from which orders were given; that the manufacturer refused to deliver merchandise corresponding to the sample; and that the importers, having made a deposit of 10,000 pesos with said manufacturer, were forced to accept the merchandise as delivered. * * *

The foregoing quotation has equal application to the present case.

The unusual condition, with attendant fluctuation in prices in the foreign market, is disclosed in the affidavit of Juan J. Robles, who was associated as a partner with petitioners in the purchase and importation of these huaraches. His affidavit was originally offered and received as part of the record in reappraisements 154212–A, etc. (*A. Orlikoff of Mexican Artcraft Co. et. al.* v. *United States*, 20 Cust. Ct. 414, Reap. Dec. 7577). This testimony of Robles was incorporated herein at the trial of this petition. It appears therefrom that shortly after the dates of exportation of this merchandise and prior to entry thereof "the market in Mexico became depressed and the prices at which huaraches were sold—or freely offered for sale to all purchasers at wholesale in Guadalajara dropped; that the market remained in that condition for about two or three weeks when it gradually recovered—and prices returned to their former level and later became—considerably inflated" (plaintiffs' exhibit 1 in reappraisements 154212–A, etc.). In the same document, the witness showed that, within the period when the shipments in question were entered, "huaraches regardless of quality were offered to me by many Manufacturers in Guadalajara at $3.00 pesos per pair F. O. B. Guadalajara."

The majority opinion emphasizes that "almost a year after entry, the petitioners wrote to the appraiser seeking information as to the value of the goods."

The majority opinion then adds the comment that "Such request for information is not sufficient to justify relief." It is true that petitioners' letters (exhibit 1 and collective exhibit 3) were sent in January 1944, "almost a year after entry," as stated by the majority. It also should be noted that these letters were sent while the appraiser had the matter of appraisement under consideration and before actual appraisement of this merchandise. "It is, of course, true that the issue must be determined upon the question of intent at the time of entry, but, for the purpose of throwing light upon the matter of intent, the conduct of the petitioner in direct relation to the subject matter, before and subsequent to the entry, may be looked to," *United States* v. *Pennsylvania Salt Manufacturing Co.*, 26 C. C. P. A. (Customs) 232, C. A. D. 22. The tenor of both of petitioners' letters (exhibit 1 and collective exhibit 3, *supra*) supports the good faith of petitioners, attempting to cooperate with the appraiser and to enter the merchandise at the proper value.

In view of the decision in the *A. Orlikoff et al.* case (Abstract 57707), *supra*, wherein the situation was, in all material respects, the same as that shown herein (with the parties and the merchandise the same, and the cause arising out of the same transaction), this petition, in my opinion, should be granted.